IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02083-WJM-KLM

ELIZABETH WOJDACZ,

      Plaintiff,

v.

OFFICER LEWIS,
DEPUTY WOOD,
OFFICER CHRIS PAPPAS,
OFFICER MATTHEW VAN PELT,
CORPORAL JOSHUA HERKO,
CORPORAL EUGENE M. ALFARO,
OFFICER THOMAS SANCHEZ,
UNIVERSITY OF COLORADO HOSPITAL,
ROSE MEDICAL CENTER, and
PRESBYTERIAN ST. LUKE'S MEDICAL CENTER,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on the following motions: (1) **Arapahoe County Deputy Sheriff Brady Wood's Partial Motion to Dismiss Plaintiff's Third Amended Complaint** [#184][1] (the "Wood Motion"); (2) **Defendants, Rose Medical Center and Presbyterian St. Luke's Medical Center's, Motion to Dismiss Plaintiff's Third Amended Complaint** [#197] ("Rose Medical and St. Luke's Motion"); (3) **Denver Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint** [#198] (the

---

[1] "[#184]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

"Denver Defendants' Motion"), filed by Defendants Sean Lewis, Chris Pappas, Matthew Van Pelt, Joshua Herko, Eugene Alfaro, and Thomas Sanchez; and (4) **Defendant University of Colorado Hospital's Motion to Dismiss with Prejudice** [#201] (the "University Hospital Motion"). Plaintiff filed Responses [#194, #204, #205, #206] in opposition to the Motions, and Defendants filed Replies [#196, #214, #215, #216]. The Motions have been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3). *See* [#186, #199, #200, #202]. The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises. Based on the following, the Court respectfully **recommends** that the Motions [#184, #197, #198, #201] be **GRANTED**.

## I. Background

Plaintiff, a pro se litigant,[2] initiated this case on September 22, 2015, by filing the Complaint [#1]. She filed the First Amended Complaint on December 15, 2015 [#10]. Following the filing of a Motion to Strike [#31] and several Motions to Dismiss [#37, #38, #47, #48], the Court ordered Plaintiff to file a Second Amended Complaint, which she did on August 31, 2016. *See* [#88]. Subsequently, another round of Motions to Dismiss [#89, #91, #97, #100, #106, #108, #134, #138] was filed and the Court dismissed all of Plaintiff's claims either with or without prejudice. *See Recommendation* [#157] at 36-38; *see also*

---

[2] The Court must construe the filings of pro se litigants liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

*Order* [#172] (adopting *Recommendation* [#157]). The Court granted Plaintiff leave to file a Third Amended Complaint with respect to the claims dismissed without prejudice. *Id.* The Third Amended Complaint [#175] filed on October 2, 2017, is 78 pages in length and contains nine claims for relief.

In the Third Amended Complaint, Plaintiff alleges that she sought medical treatment from three different facilities, Defendants University of Colorado Hospital, Rose Medical, and St. Luke's (collectively, the "Medical Defendants").[3] *See Third Am. Compl.* [#175] at 6, 9, 12. Plaintiff asserts that she sought treatment from Defendant University of Colorado Hospital on November 22, 2014, for "exposure related illness" which included strep throat, bronchitis, laryngitis, and a cold. *Id.* at 6-7. Plaintiff further asserts that she was discharged after being given "two Tylenols." *Id.* On November 26, 2014, Plaintiff went to Defendant Rose Medical and was treated with "Zithromax for the strep throat and Robitussin with codeine for the bronchitis and pneumonia." *Id.* at 6.

Following a physical assault by an unnamed non-party, Plaintiff next sought treatment from Defendant Rose Medical on June 18, 2015, June 25, 2015, July 7, 2015, and July 14, 2015, for "symptoms of a separated shoulder and spinal injury" and was discharged after being given "Ibuprofen, Prednisone, Noroco, and Valium, and a IV [sic] drip used for dehydration." *Id.* at 9-10. On July 14, 2015, Plaintiff went to Defendant St. Luke's seeking treatment for the same physical assault-related injuries including "symptoms of a separated shoulder and spinal injury, including extreme sudden dizziness." *Id.* at 12.

---

[3] The Court construes all of the well-pled allegations in the Third Amended Complaint in favor of Plaintiff, the non-moving party. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

Plaintiff was discharged from Defendant St. Luke's after being given "25 MG of Meclizine HCI" for her dizziness. *Id.* at 13. Plaintiff sues the Medical Defendants under the Emergency Medical Treatment and Labor Act ("EMTALA") for failing to treat, screen, and/or stabilize Plaintiff adequately before discharging her. *Id.*

In addition, Plaintiff alleges that she is being retaliated against for her May 2014 testimony in a prior case (Case No. 12-cv-01483-REB-MEH), her August 2014 filing of an affidavit in another case (Case No. 13-cv-01783-MSK-MJW), and for demanding a murder investigation regarding the death of her son. *See id.* at 19, 36. The alleged retaliation arises from the following events involving the Denver Police Department and Arapahoe County Deputy Sheriff. In August 2014, Plaintiff was approached by Denver Police Department officers while panhandling and was instructed "to leave immediately as there was no panhandling in Denver." *Id.* at 19. On August 25, 2014, a "hold" was placed on Plaintiff's vehicle by an "unidentified Denver Police Officer." *Id.* at 20. On September 28, 2014, Defendant Wood, an officer of the Arapahoe County Sheriff's Department, pulled Plaintiff over for an alleged traffic violation and allegedly "unbuttoned his shirt and placed the valid proof of insurance card inside his shirt" and then "told Plaintiff she failed to produce a valid proof of current insurance." *Id.* at 20, 24. During the traffic stop, Defendant Lewis arrived at the scene. *Id.* at 23. Plaintiff was arrested and her vehicle was towed based on the "hold." *Id.* at 20. Further, Plaintiff asserts claims related to her religious beliefs. Specifically, Plaintiff alleges that she "is an Orthodox Christian, and as a part of her religious belief and practice, she engages in almsgiving, (and receiving of those alms) by the way of panhandling." *Id.* at 53. Plaintiff asserts that she was arrested by Defendant Pappas, an officer of the Denver Police Department, on July 20, 2016, while she was

panhandling.  *Id.* at 54.  Defendant Van Pelt was present at the time of the arrest, and Defendants Herko and Alfaro arrived at the scene shortly after Defendant Pappas handcuffed Plaintiff.  *Id.* at 55.  Plaintiff was released "about 15 minutes" after being handcuffed.  *Id.* at 57.  On August 9, 2016, Defendant Sanchez approached Plaintiff while she was panhandling and told her that "if she did not stop panhandling and leave the area he would issue her a ticket for pedestrian in the roadway."  *Id.*

Plaintiff brings the following claims: (1) an EMTALA claim against the Medical Defendants; (2) a First Amendment retaliation claim against Defendants Wood, Lewis, "John Doe officer," and "John Doe Deputy"; (3) a Fourth Amendment unlawful arrest claim against Defendant Wood; (4) a Fourth Amendment unlawful seizure of property claim against Defendants Wood, Lewis, and Doe Deputies/Officers; (5) an Eighth Amendment cruel and unusual punishment claim against Defendants Wood, Lewis, Doe Deputy, and Doe Officers; (6) a First Amendment claim for interference with free speech and free practice of religion against Defendants Pappas, Van Pelt, Alfaro, and Sanchez; (7) a Fourth Amendment false arrest claim against Defendant Pappas; (8) a Fourth Amendment unlawful search claim against Defendant Alfaro; and (9) a Fourteenth Amendment religious discrimination claim against Defendants Pappas, Van Pelt, Herko, Alfaro, and Sanchez. *See Third Am. Compl.* [#175] at 15, 35, 39, 44, 48, 61, 65, 69, 73.

## II.  Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its

jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1).

Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.

*F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of

establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or

factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing

a facial attack on a complaint, the Court accepts the allegations of the complaint as true.

*Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not

presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual

attack, the moving party challenges the facts upon which subject-matter jurisdiction

depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make

its findings regarding disputed jurisdictional facts, the Court "has wide ranging discretion

to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l

Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825

F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the

pleadings" to make findings concerning purely jurisdictional facts does not convert a motion

to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule

56. *Id.*

**B.      Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the

sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ.

P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader

is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

## C.    Qualified Immunity

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Court's analysis of qualified immunity in the context of a 12(b)(6) motion involves two inquiries.  The Court must determine whether the alleged facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court must also consider whether the plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity."  *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  The Court may assess these inquiries in either order.  *Pearson*, 555 U.S. at 236.

## III.  Analysis

## A.    First Claim: EMTALA Violations

Plaintiff asserts that the Medical Defendants violated her rights under EMTALA.  *See Third Am. Compl.* [#175] at 17.  EMTALA was enacted to address concerns that hospitals were refusing to accept or treat patients with emergency conditions who lacked medical insurance.  *See St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 692 (10th Cir. 2002).  EMTALA requires that participating hospitals with emergency departments provide patients with a medical screening examination to determine whether

the patient has an emergency medical condition that demonstrates "acute symptoms of sufficient severity" such that the absence of immediate treatment could reasonably be expected to result in placing the individual's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction to any bodily organs. 42 U.S.C. § 1395dd(e). If it is determined that the patient has an emergency medical condition, the hospital must provide either:

> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

§ 1395dd(b)(1). Subsection (c) provides that a non-stabilized patient may only be transferred when an "appropriate transfer" is requested by the patient, or when a physician certifies that the medical benefits of the transfer likely outweigh the risks. § 1395dd(c). To state an EMTALA claim, a plaintiff must also allege that she was treated differently from other individuals perceived to be suffering from the same medical condition. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 797 (10th Cir. 2001).

Plaintiff alleges that, when she sought treatment from the Medical Defendants, the Medical Defendants "did not afford Plaintiff an appropriate screening as required under EMTALA," even though she allegedly exhibited "emergency medical conditions."[4] *Third Am. Compl.* [#175] at 6, 9, 12, 17. Further, Plaintiff alleges that all of the Medical

---

[4] Plaintiff asserts that the symptoms she sought treatment for from Defendant University Hospital were "strep throat, bronchitis, pneumonia, laryngitis and a cold." *Third Am. Compl.* [#175] at 6. Plaintiff asserts that the symptoms she sought treatment for from Defendant Rose Medical included "symptoms of a separated shoulder and spinal injury." *Id.* at 9. Lastly, Plaintiff asserts that the symptoms she sought treatment for from Defendant St. Luke's were "symptoms of a separated shoulder and spinal injury, including extreme sudden dizziness." *Id.* at 12.

Defendants failed to comply with EMTALA by "discharging Plaintiff in worse condition than when she arrived in their emergency departments, providing not even the slightest of care most of the times, or, care for issues she was not presenting to them for." *Id.* at 17.

Defendants Rose Medical, St. Luke's, and University of Colorado Hospital move to dismiss Plaintiff's Third Amended Complaint [#175], arguing that Plaintiff: (1) fails to assert how the screenings that were conducted were inappropriate or deficient; (2) does not assert facts to establish that the Medical Defendants had actual knowledge that she had an emergency medical condition; and (3) fails to allege that she was treated differently from other individuals presenting with the same medical conditions. *See Rose Medical and St. Luke's Motion* [#197] at 4-5, 7; *University Hospital's Motion* [#201] at 4-6.

As the Medical Defendants argue, Plaintiff fails to allege in more than a conclusory fashion that her medical screenings were deficient. The Third Amended Complaint merely states that each of the Medical Defendants "did not afford Plaintiff an appropriate screening as required under EMTALA and/or she was discharged before emergency medical condition was stabilized." *Third Am. Compl.* [#175] at 6, 9, 12. She has not explained why she believes the screenings were "inappropriate." To the extent that Plaintiff alleges that the screenings were deficient because Defendants failed to identify any emergency medical conditions, her assertion lacks merit because EMTALA "is not a federal malpractice or negligence statute."[5] *See Genova v. Banner Health*, 896 F. Supp. 2d 993, 1002 (D. Colo.

---

[5] Additionally, Plaintiff's argument that her condition deteriorated after leaving the hospitals does not support her argument that she was experiencing emergency medical conditions at the time of the screenings. For example, Plaintiff asserts that she later experienced "loss of motion in right arm," loss of bowel control, irregular heartbeat, "organ damage from untreated strep throat," and "potential shortening of life from untreated strep throat." *See Third Am. Compl.* [#175] at 7, 10. However, Plaintiff does not indicate that she was experiencing this wide range of symptoms at the

2012), *aff'd*, 734 F.3d 1095 (10th Cir. 2013); *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994) (stating that "the statute's [screening] requirement is hospital-specific, varying with the specific circumstances of each provider").  Furthermore, Plaintiff's assertion that the Medical Defendants "were acting per internal directives of their hospitals not to screen, stabilize or otherwise treat uninsured patients" is pure speculation. *Third Am. Compl.* [#175] at 17; *Christy Sports*, 555 F.3d at 1191.  Thus, Plaintiff has not plausibly alleged that the Medical Defendants failed to conduct an appropriate medical screening, nor has she alleged that she was treated differently from other individuals perceived to be suffering from the same medical conditions. *See Twombly*, 550 U.S. at 570; *Phillips*, 244 F.3d at 797.

Accordingly, the Court respectfully **recommends** that the Medical Defendants' Motions [#197, #201] be **granted**, and that Plaintiff's First Claim be **dismissed with prejudice**. *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (explaining that dismissal with prejudice is appropriate where a plaintiff's amended pleadings fail to cure the deficiencies in his claims); *see also Robinette v. Schirard*, No. 10-cv-02172-CMA-KLM, 2014 WL 12649011, at *12 (D. Colo. Feb. 11, 2014) (dismissing the pro se plaintiffs' claims with prejudice because they had multiple opportunities to amend the pleadings and granting leave to amend again would be futile).

## B.    Second Claim: First Amendment Retaliation

Plaintiff's Second Claim alleges that Defendants Wood and Lewis retaliated against her for accessing the courts in her May 2014 testimony in a prior case, her August 2014

---

time when she sought treatment from the Medical Defendants.

filing of an affidavit in another case, and for demanding a murder investigation regarding the death of her son. *Third Am. Compl.* [#175] at 19, 35. The alleged retaliatory acts appear to consist of the traffic stop, her arrest, and the towing of her vehicle on September 28, 2014. *See id.* at 20.

To state a claim for unlawful retaliation under the First Amendment, a plaintiff must allege that: "(1) [s]he was engaged in constitutionally protected activity, (2) the government's actions caused [her] injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to [her] constitutionally protected conduct." *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015).

Defendant Wood argues that Plaintiff's Third Amended Complaint [#175] fails to allege "facts to support a finding that her arrest was motivated by a retaliatory animus" and thus, fails to demonstrate a constitutional violation. *Wood's Motion* [#184] at 4-5. Additionally, the Denver Defendants argue that "Plaintiff's Third Amended Complaint is devoid of a single factual allegation to plausibly demonstrate that Defendant Lewis' purported action of towing her vehicle was substantially motivated as a response to her prior lawsuits or the affidavits she filed." *Denver Defendants' Motion* [#198] at 8. Further, Defendants Wood and Lewis argue that they are each entitled to qualified immunity on Plaintiff's Second Claim. *Wood Motion* [#184] at 3; *Denver Defendants' Motion* [#198] at 7.

Even construing Plaintiff's allegations liberally, the Third Amended Complaint [#175] fails to demonstrate that Defendants Wood or Lewis had any reason to know about Plaintiff's involvement in civil cases or her demand for a murder investigation regarding the

death of her son. *See Third Am. Compl.* [#175] at 35-39. While Plaintiff argues that Defendants Wood and Lewis acted with "[r]etaliatory animus" and that "[t]he unlawful conduct used against Plaintiff" violated her First Amendment rights, she has not stated any facts—as opposed to improper legal conclusions—indicating that Defendants were aware of her court activities. *See id.* at 36-37. Because Plaintiff has failed to sufficiently allege that Defendants Wood and Lewis were motivated by her constitutionally protected conduct, she has failed to demonstrate that Defendants Wood and Lewis were substantially aware of her constitutionally protected conduct. *See Mocek*, 813 F.3d at 930; *see also Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (explaining that the plaintiff's retaliation claim failed because he had "presented no evidence that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions"); *Magluta v. U.S. Fed. Bureau of Prisons*, No. 08-cv-00404-CMA-MJW, 2009 WL 1504749, at *3-4 (finding that the plaintiff failed to state a plausible retaliation claim because he had not identified any facts alleging that defendants' conduct would not have happened but for the plaintiff's protected activity).

Therefore, Plaintiff has not sufficiently alleged a constitutional violation, and the Court finds that Defendants Wood and Lewis are entitled to qualified immunity with respect to Claim Two. *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1293 (D. Colo. 2009). Accordingly, the Court respectfully **recommends** that Defendant Wood's Motion [#184] and the Denver Defendants' Motion [#198] be **granted**, and that Plaintiff's Second Claim be **dismissed with prejudice** with respect to Defendants Wood and Lewis. *See Sheldon*, 269 F.3d at 1207 n.5; *see also Robinette*, 2014 WL 12649011, at *12.

## C.  Fourth Claim: Fourth Amendment Unlawful Seizure

Plaintiff's Fourth Claim appears to relate to the towing of her vehicle on September 28, 2014, during the traffic stop by Defendant Wood. *See id.* at 20-27. Based on Plaintiff's allegations, Defendant Wood pulled Plaintiff over and Defendant Lewis arrived at the scene a few minutes later. *Id.* Plaintiff was arrested, taken to Arapahoe County jail for "about 22 hours," and issued a ticket for failure to present proof of insurance. *Id.* at 28, 30. The ticket was later dismissed.[6] *Id.* at 30.

### 1.    Defendant Wood

Plaintiff alleges that a John Doe Police Officer "placed a hold" on Plaintiff's truck on August 25, 2014, that "would allow Denver Police to tow away Plaintiff[']s truck from anywhere in Colorado where it could be found, with or without an arrest of Plaintiff." *Third Am. Compl.* [#175] at 20, 29. Plaintiff then appears to assert that Defendant Wood violated her Fourth Amendment rights by pulling her over based on the improper hold. *Id.* Defendant Wood argues that he is entitled to qualified immunity on Plaintiff's Fourth Claim. *See Wood Motion* [#184] at 3.

Law enforcement officers are entitled to rely on probable cause determinations made by other officers. *See United States v. Hensley*, 469 U.S. 221, 230-31 (1985) (explaining that officers were entitled to act on a "wanted flyer" issued by another police department even though they "were unaware of the specific facts that established probable cause"). Here, Plaintiff essentially alleges that Defendant Wood erred in relying on John Doe Officer's determination. However, Plaintiff has not provided any facts challenging John Doe

---

[6] To the extent that Plaintiff alleges that she was subject to a "warrantless arrest," those allegations are the subject of her Third Claim asserted solely against Defendant Wood, which he does not seek to dismiss. *See Third Am. Compl.* [#175] at 39; *Answer* [#185].

Officer's probable cause determination in placing the hold on her vehicle. *See Sanchez v. Bauer*, No. 14-cv-02804-MSK-KLM, 2015 WL 5026195, at *3-4 (D. Colo. Aug. 26, 2015) (explaining that in order to state a Fourth Amendment claim for unlawful search or seizure under § 1983, the Complaint must "allege facts tending to show an absence of probable cause"). Thus, Plaintiff fails to sufficiently allege that Defendant Wood's reliance on John Doe's determination was improper. *See United States v. Whitley*, 680 F.3d 1227, 1234-35 (10th Cir. 2012) (finding that the defendant was "justified in relying on [another officer's] request to conduct the stop"). Consequently, Plaintiff has not sufficiently alleged that Defendant Wood's conduct violated a constitutional right.

Defendant Wood is therefore entitled to qualified immunity with respect to Plaintiff's Fourth Claim. *See Escobar*, 668 F. Supp. 2d at 1293. Accordingly, the Court respectfully **recommends** that Defendant Wood's Motion [#184] be **granted**, and that Plaintiff's Fourth Claim be **dismissed with prejudice** with respect to him. *See Sheldon*, 269 F.3d at 1207 n.5; *see also Robinette*, 2014 WL 12649011, at *12.

### 2.    Defendant Lewis

With respect to Defendant Lewis, Plaintiff states that he was present when the tow truck arrived, and that he "produced a document advising Plaintiff to meet with a Denver Detective a few days later and she received that document upon her release from jail the following day." Plaintiff also alleges that Defendant Lewis "never gave a notice of impound to Plaintiff." *Third Am. Compl.* [#175] at 26-27.

The Denver Defendants argue that Plaintiff's Fourth Claim should be dismissed with respect to Defendant Lewis because his reliance on Defendant Wood's probable cause

determination with respect to the hold on Plaintiff's truck was appropriate. Further, the Denver Defendants argue that Defendant Lewis is entitled to qualified immunity on Plaintiff's Fourth Claim. *See Denver Defendants' Motion* [#198] at 7.

As the Court previously stated, police officers are entitled to rely on probable cause determinations made by other officers. *See Hensley*, 469 U.S. at 230-31. Thus, Defendant Lewis was entitled to rely on Defendant Wood's probable cause determination when he arrived at the scene. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (finding that when the defendant officer arrived late to the scene he was entitled to rely on the other officer's statement that there was probable cause to detain the plaintiff). Plaintiff has not given any facts to indicate that Defendant Lewis acted improperly by relying on Defendant Wood's probable cause determination and thus, has not plausibly stated that Defendant Lewis' conduct violated her Fourth Amendment rights. *See Third Am. Compl.* [#175] at 46. Because Plaintiff has not plausibly alleged that Defendant Lewis "unlawfully seized" her truck, he is entitled to qualified immunity with respect to Plaintiff's Fourth Claim. *See Escobar*, 668 F. Supp. 2d at 1293.

Accordingly, the Court respectfully **recommends** that the Denver Defendants' Motion [#198] be **granted**, and that Plaintiff's Fourth Claim be **dismissed with prejudice** with respect to Defendant Lewis. *See Sheldon*, 269 F.3d at 1207 n.5; *see also Robinette*, 2014 WL 12649011, at *12.

### D. Fifth Claim: Eighth Amendment Cruel and Unusual Punishment

Plaintiff's Fifth Claim alleges that Defendants Wood and Lewis' conduct surrounding Plaintiff's arrest and the towing of her vehicle "result[ed] in cruel and unusual punishment

that would shock the consciousness of average [*sic*] citizen."[7]  *Third Am. Compl.* [#175] at 32, 48.

"The Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes . . . and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."  *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (internal quotation marks and citations omitted); *see also City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (explaining that while the Eighth Amendment prohibits infliction of cruel and unusual punishment on prisoners, it applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law") (internal quotation marks and citation omitted); *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) ("[T]he Eighth Amendment does not apply until after an adjudication of guilt.").

As Defendants argue, Plaintiff was not convicted of any crime or subject to any criminal proceedings at the time of the conduct at issue, i.e. at the time of the traffic stop.  *Wood's Motion* [#184] at 2; *see also Denver Defendants' Motion* [#198] at 10.  Thus, Plaintiff has failed to plausibly allege an Eighth Amendment claim.  *See City of Revere*, 463 U.S. at 244.

Because Plaintiff has not sufficiently alleged an underlying constitutional violation, the Court finds that Defendants Wood and Lewis are entitled to qualified immunity with

---

[7]  In her Response to the Denver Defendants' Motion [#205], Plaintiff argues that her Eighth Amendment claim against Defendant Lewis is premised on her "right under the 8th Amendment to be free from excessive bail."  *Response* [#205] at 12-13.  However, the Third Amended Complaint [#175] contains no allegations that bail was imposed on Plaintiff at any time.  Thus, Plaintiff's mention of "excessive bail" appears to be in error.

respect to the Fifth Claim.  *See Escobar*, 668 F. Supp. 2d at 1293.  Accordingly, the Court respectfully **recommends** that Defendant Wood's Motion [#184] and the Denver Defendant's Motion [#198] be **granted**, and that Plaintiff's Fifth Claim be **dismissed with prejudice** in its entirety.  *See Olds v. Esslinger*, No. 09-cv-01472-CMA-CBS, 2010 WL 749829, at *2 (D. Colo. Mar. 4, 2010) (dismissing the plaintiff's Eighth Amendment claim with prejudice because he was not a convicted inmate at the time of the challenged conduct); *see also Sheldon*, 269 F.3d at 1207 n.5.

**E.      Seventh Claim: Fourth Amendment "False Arrest"**

Plaintiff's Seventh Claim for "false arrest" against Defendant Pappas appears to be related to an incident in which Defendant Pappas handcuffed her while she was panhandling on July 20, 2016.  *See Third Am. Compl.* [#175] at 65.  Plaintiff alleges that Defendant Pappas handcuffed her for approximately 15 minutes.  *See ia* at 54-57.  Plaintiff asserts that she "had a clearly established constitutional right to be free from an unlawful arrest that was made without probable cause."  *Id.* at 66.  Plaintiff appears to assert that the basis for believing the arrest was "unlawful" or "false" was because Defendant Pappas refused to tell her why she was handcuffed.  *See id.* at 54-55.

Because Plaintiff was handcuffed, she has sufficiently alleged that she was "seized" within the meaning of the Fourth Amendment.  *See United States v. Hernandez*, 847 F.3d 1257, 1266 (10th Cir. 2017) (stating that the plaintiff had sufficiently alleged that he was seized based on an "objective reason to believe that he is not free to terminate his conversation with the officer and proceed on his way") (internal quotation marks omitted). Plaintiff alleges that the seizure was unlawful because Defendant Pappas did not advise

her why she was being handcuffed. *See Third Am. Compl.* [#175] at 54-55. However, police officers are not required to advise suspects why they are being detained or placed under arrest. *Rudd v. Graves*, 22 F. App'x 954, 956 (10th Cir. 2001) (explaining that the Fourth Amendment "does not require officers to tell a suspect the grounds for [her] arrest or even to expressly state that [she] is under arrest; rather, it requires that officers have probable cause before making an arrest"). Plaintiff provides no additional details explaining why she believes she was subjected to an unlawful seizure. Thus, Plaintiff's bare assertion that she was subject to a false arrest merely because Defendant Pappas did not tell her why she was seized is insufficient to state a claim.[8] *See id.*

Accordingly, the Court respectfully **recommends** that the Denver Defendants' Motion [#198] be **granted**, and that Plaintiff's Seventh Claim be **dismissed with prejudice**. *See Sheldon*, 269 F.3d at 1207 n.5; *see also Robinette*, 2014 WL 12649011, at *12.

## F. Eighth Claim: Fourth Amendment Unlawful Search

Plaintiff's Eighth Claim alleges that Defendant Alfaro violated her Fourth Amendment rights when he "began to rummage through her bag without permission" after Defendant Pappas handed it to him while Plaintiff was handcuffed on July 20, 2016. *See Third Am. Compl.* [#175] at 54-55, 69. Plaintiff alleges that she "had a clearly established constitutional right to be free from an unlawful search after an arrest that was made without probable cause." *Id.* at 70.

As discussed above with respect to Plaintiff's Seventh Claim, Plaintiff has not plausibly alleged that she was subject to an unlawful seizure or arrest. Thus, because

---

[8] The Denver Defendants do not argue that Defendant Pappas is entitled to qualified immunity with respect to Plaintiff's Seventh Claim.

Plaintiff was under arrest, the search of her belongings was also lawful. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest.") (citing *Weeks v. United States*, 232 U.S. 383, 392 (1914)). Thus, Plaintiff has not sufficiently alleged that Defendant Alfaro acted in violation of her constitutional rights.[9]

Accordingly, the Court respectfully **recommends** that the Denver Defendants' Motion [#198] be **granted**, and that Plaintiff's Eighth Claim be **dismissed with prejudice**. *See Sheldon*, 269 F.3d at 1207 n.5; *see also Robinette*, 2014 WL 12649011, at *12.

## G. Sixth and Ninth Claims

In the previous Order [#172] dismissing Plaintiff's claims, the District Judge granted Plaintiff leave to amend her Second Amended Complaint *only* with respect to an enumerated list of claims that were dismissed without prejudice. *See Order* [#172] at 11-12. The Denver Defendants argue that Plaintiff's Sixth and Ninth Claims should be dismissed because they are new claims outside of the scope of Plaintiff's leave to amend. *See Denver Defendants' Motion* [#198] at 2.

The claims previously dismissed without prejudice include former Count 19, which related to incidents in which Denver police officers told Plaintiff to stop panhandling at various locations, including the July 20, 2016 incident in which she was handcuffed by Defendant Pappas. *See Second Am. Compl.* [#88] at 57-63. Plaintiff alleged First Amendment and Equal Protection violations arising from those allegations. *See id.* at 57, 62.

---

[9] The Denver Defendants do not argue that Defendant Alfaro is entitled to qualified immunity with respect to Plaintiff's Eighth Claim.

The same underlying events, i.e., Denver officers interfering with Plaintiff's panhandling, form the basis of Plaintiff's Sixth and Ninth Claims that are presently before the Court. *See Third Am. Compl.* [#175] at 61, 73. However, Plaintiff has added new assertions that, as an Orthodox Christian, she is entitled to the receiving of alms. *See id.* at 53. Accordingly, Plaintiff has changed her legal theory to assert violations of constitutional rights related to religion. Claim Six alleges that the Denver Defendants' conduct interfered with her right to free speech and free practice of religion. *Id.* at 61. Claim Nine alleges Fourteenth Amendment religious discrimination. *Id.* at 73.

Indeed, Plaintiff has not filed a motion for leave to amend in order to add these new facts and claims that are unrelated to those the Court permitted her to amend. Nonetheless, for the sake of completeness, the Court addresses the sufficiency of Plaintiff's allegations in these claims.

### 1.   Sixth Claim: First Amendment Interference with Free Speech and Free Practice of Religion

Plaintiff's Sixth Claim alleges that Defendants Pappas, Van Pelt, Herko, Alfaro, and Sanchez deprived her of freedom of speech and "free practice of her religion respecting receiving alms by panhandling." *Third Am. Compl.* [#175] at 62. Specifically, Plaintiff asserts that "[t]he act of panhandling is a constitutionally protected right under the First Amendment freedom of speech" and that as an "Orthodox Christian," Plaintiff "engaged in almsgiving, (and receiving of those alms) by the way of panhandling." *Id.* at 53. Additionally, Plaintiff asserts that "[r]etaliatory animus for Plaintiffs [*sic*] exercise of those federally protected activities . . . was the substantially moving factor in the constitutional deprivations." *Id.* at 62-63.

The Denver Defendants argue that they are entitled to qualified immunity on Plaintiff's Sixth Claim because "the Third Amended Complaint is devoid of any allegations that any of these Defendants either knew of or had any reason to know of her claimed religious beliefs." *Denver Defendants' Motion* [#198] at 12. Thus, the Denver Defendants argue that Plaintiff has not sufficiently alleged that they were substantially motivated by her constitutionally protected conduct. *Id.*

As discussed above with respect to Plaintiff's First Amendment retaliation claim against Defendant Lewis, in order to state a plausible retaliation claim, Plaintiff must allege that "the government's actions were substantially motivated as a response to [her] constitutionally protected conduct." *See Mocek*, 813 F.3d at 930. Plaintiff fails to sufficiently allege that any of these Defendants knew or had any reason to know of her religious affiliations. Plaintiff's argument in the Response [#205] that the Denver Defendants "knew or should have known . . . that Plaintiff had the right under the [First] Amendment to freely practice her religion and to seek the giving of Alms" is conclusory. *See Response* [#205] at 12. Thus, Plaintiff has failed to sufficiently allege that the Denver Defendants' alleged actions were substantially motivated by her constitutionally protected conduct. *See Peterson*, 149 F.3d at 1144.

Plaintiff also asserts that the Denver Defendants retaliated against her for her "lawful litigation activity and other constitutionally protected activity" by allowing her to be subject to "multiple police solicited beating [sic] by citizens," referring to two physical assaults by unnamed persons in August 2016. *Third Am. Compl.* [#175] at 57-59. However, it is similarly unclear that the Denver Defendants were aware of that alleged constitutionally protected activity. Additionally, Plaintiff has not plausibly alleged that there is any

connection between the Denver Defendants and the physical assaults by unnamed individuals. *See Christy Sports*, 555 F.3d at 1191 (explaining that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level").

Thus, because Plaintiff has not sufficiently alleged a constitutional violation, Defendants Pappas, Van Pelt, Herko, Alfaro, and Sanchez are entitled to qualified immunity with respect to Plaintiff's Sixth Claim. *See Escobar*, 668 F. Supp. 2d at 1293. Accordingly, the Court respectfully **recommends** that the Denver Defendants' Motion [#198] be **granted**, and that Plaintiff's Sixth Claim be **dismissed with prejudice**. *See Sheldon*, 269 F.3d at 1207 n.5.

### 2. Ninth Claim: Fourteenth Amendment Religious Discrimination

Plaintiff states that she brings her Ninth Claim pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981. She alleges that she exercised her constitutionally protected right to practice her religion, and that Defendants Pappas, Van Pelt, Herko, Alfaro, and Sanchez violated that right. *See Third Am. Compl.* [#175] at 74. The specific allegations underlying this claim are unclear. Plaintiff appears to allege that these Defendants discriminated against her based on her religion by telling Plaintiff to stop panhandling while "other people panhandling at this same location . . . were not told to leave by police." *See id.* At 57-58.

As the Denver Defendants argue, to the extent that Plaintiff brings her claim pursuant to § 1981, the claim fails because that statute pertains to racial discrimination and the creation and enforcement of contracts. Plaintiff does not allege that there is a contract at issue in this case, or that she was discriminated against because of her race. *Denver Defendants' Motion* [#198] at 14; *see also Olguin v. Lucero*, 87 F.3d 401, 406 (10th Cir.

1996) (affirming the district court's finding that § 1981 was inapplicable to the case because the plaintiffs "wholly failed to give any indication that the actions of which they complain[ed] were racially motivated").

To the extent that Plaintiff brings her Ninth Claim pursuant to 42 U.S.C. § 1983, the Court previously gave Plaintiff leave to amend the allegations underlying Claim Nine with respect to an Equal Protection Claim. *See Order* [#172].

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Clause "creates no substantive rights[, but] embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The Supreme Court has recognized "successful equal protection claims brought by a 'class of one,'" where a plaintiff does not allege membership in a class or group. *Vill. of Willowbrook v. Oleck*, 528 U.S. 562, 564 (2000). To state an Equal Protection claim in a "class-of-one" case, a plaintiff must "first establish that others, similarly situated in every material respect were treated differently" and "then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive . . . and wholly unrelated to any legitimate state activity." *Kan. Penn. Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (internal quotation marks and citations omitted).

Here, Plaintiff alleges a class-of-one equal protection claim. *See Third Am. Compl.* [#175] at 57-59. While Plaintiff again attempts to allege that the Denver Defendants engaged in "selective enforcement" of panhandling laws, which implicates the Equal Protection Clause, she did not cure any of the defects previously noted by the Court. *See*

*Third Am. Compl.* [#175] at 59. For example, the Court specifically noted that the Second Amended Complaint [#88] failed to allege that others who were similarly situated to Plaintiff in all material aspects received more favorable treatment. *See Recommendation* [#157] at 29; *see also Order* [#172] (adopting *Recommendation* [#157]). The Third Amended Complaint [#175] states that "Plaintiff has seen many other people panhandling at this same location that were not told to leave by police." *Third Am. Compl.* [#175] at 58. This allegation is insufficient because it is unclear whether any police were aware of the other people's panhandling activities, or whether the panhandling was only "allowed" because they were not caught. Thus, Plaintiff's Third Amended Complaint again fails to allege that others who are similarly situated in all material aspects to Plaintiff received more favorable treatment.[10] *See Kan. Penn. Gaming*, 656 F.3d at 1216.

Accordingly, the Court respectfully **recommends** that the Denver Defendants' Motion [#198] be **granted**, and that Plaintiff's Ninth Claim be **dismissed with prejudice**. *See Sheldon*, 269 F.3d at 1207 n.5.

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that all Defendants' Motions [#184, #197, #198, #201] be **GRANTED**.

If this Recommendation is accepted, Plaintiff's First, Fifth, Sixth, Seventh, Eighth, and Ninth Claims will be **dismissed with prejudice** in their entirety.

If this Recommendation is accepted, Plaintiff's Second and Fourth Claims will be **dismissed with prejudice** with respect to Defendants Wood and Lewis.

---

[10] The Denver Defendants do not argue that they are entitled to qualified immunity with respect to Plaintiff's Ninth Claim.

If this Recommendation is accepted, the following claims will remain:

(1) Claim Two (First Amendment retaliation) against John Doe Deputy and John Doe Officer;

(2) Claim Three (Fourth Amendment unlawful arrest) against Defendant Wood; and

(3) Claim Four (Fourth Amendment unlawful seizure of property) against John Doe Deputies and John Doe Officers.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 24, 2018                BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge