**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-2083-WJM-KLM

ELIZABETH WOJDACZ,

     Plaintiff,

v.

DEPUTY WOOD,
JOHN DOE DEPUTY,
JOHN DOE OFFICER,
JOHN DOE DEPUTIES, and
JOHN DOE OFFICERS,

     Defendants.

---

**ORDER ADOPTING JULY 17, 2019 RECOMMENDATION OF**
**MAGISTRATE JUDGE GRANTING DEPUTY WOOD'S MOTION FOR**
**SUMMARY JUDGMENT AND DISMISSING DOE DEFENDANTS**

---

     This matter is before the Court on United States Magistrate Judge Kristen L.

Mix's Recommendation dated July 17, 2019 (the "Recommendation"; ECF No. 260),

which recommended that this Court (1) dismiss Defendants John Doe Deputy, John

Doe Officer, John Doe Deputies, and John Doe Officers (collectively, "Doe

Defendants") from this case; and (2) grant Defendant Deputy Wood's ("Deputy Wood")

Motion for Summary Judgment (the "Motion"; ECF No. 243). The Recommendation is

incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Plaintiff Elizabeth Wojdacz ("Plaintiff") filed an Objection to the Recommendation

("Objection"; ECF No. 264), to which Deputy Wood responded (ECF No. 270).

     For the reasons set forth below, the Recommendation is adopted in its entirety,

Plaintiff's Objection is overruled, the Doe Defendants are dismissed without prejudice, and Deputy Wood's Motion for Summary Judgment is granted.

## I. BACKGROUND[1]

On the night of September 28, 2014, Deputy Wood was on patrol in the 9500 block of East Iliff Avenue in Denver, Colorado. (¶ 2.)[2] During his patrol, Deputy Wood observed Plaintiff's white Chevrolet S-10 driving past him on the other side of the street. (*Id.*) Deputy Wood then received a "hit" on his License Plate Reader, which informed him that there was a misdemeanor warrant associated with the vehicle. (*Id.*) Deputy Wood turned his patrol car around and followed Plaintiff's vehicle. (*Id.*) Deputy Wood then observed Plaintiff's vehicle turn left into a parking lot behind a store located at 2281 South Parker Road. (*Id.*) Deputy Wood continued to the stop light at the intersection of East Iliff Avenue and South Parker Road. (*Id.*)

While at the stop light, Deputy Wood researched the License Plate Reader "hit," and learned that there was an "attempt to locate" notice on the vehicle rather than a warrant. (¶ 3.) Deputy Wood then observed Plaintiff's vehicle turn left out of the parking lot "into the outer-most right-hand lane" of South Parker Road. (*Id.*; *see also* ECF No. 243-2 at 2 (Plaintiff admitting that in turning left out of the parking lot, she went "straight across the road, [to] the farthest lane").) Deputy Wood perceived this turn as

---

[1] The following factual summary is largely drawn from the Motion, its exhibits, and the Recommendation. This is because—as the Court will discuss more fully below—Plaintiff failed to adequately address Deputy Wood's statement of undisputed facts or offer admissible evidence in opposition to the Motion, and because Plaintiff failed to specifically object to the Recommendation. Nonetheless, the Court views the following factual summary in the light most favorable to Plaintiff.

[2] All "¶" citations, without more, are to Deputy Wood's Declaration (ECF No. 243-1).

an improper lane violation under Colorado traffic law and, for this reason, activated his emergency lights and pulled over Plaintiff's vehicle for a traffic stop. (¶ 3.) *See also* Colo. Rev. Stat. § 42-4-901(1)(b) ("Whenever practicable, the left turn shall be made to the left of the center of the intersection so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered.").

Upon making contact with the vehicle, Deputy Wood observed Plaintiff as the sole occupant and driver of the vehicle. (¶ 4.) Deputy Wood recalls that Plaintiff's vehicle was "full of personal items" and in "disarray," and that it was apparent Plaintiff "was living out of her vehicle." (¶ 11; *see also* ECF No. 243-2 at 15 (Plaintiff acknowledging that she lived in her vehicle at the time).) Deputy Wood asked Plaintiff for her license, registration, and proof of insurance. (¶ 4.) Plaintiff provided Deputy Wood with her license, registration, and an expired proof of insurance. (*Id*.) In addition to providing the expired proof of insurance, Plaintiff claims that she also provided Deputy Wood with a valid, unexpired proof of insurance. (ECF No. 243-2 at 15 ("I gave him two [proofs of insurance]: One valid, one expired.").) (*But see id*. (when asked why she gave Deputy Wood two proofs of insurance, Plaintiff responded: "I gave him all the stuff I had in my wallet. I didn't go through it.").) Plaintiff, however, never informed Deputy Wood that she provided him with a valid proof of insurance—nor did Deputy Wood ever acknowledge the receipt of any valid proof of insurance. (¶¶ 4–5; ECF No. 243-2 at 3.)

Deputy Wood requested that Plaintiff provide an alternative proof of insurance. (¶ 4.) In response, Plaintiff provided Deputy Wood with a bill for payment of insurance.

(*Id*.)  Deputy Wood did not accept this alternative proof of insurance because it did not identify the vehicle associated with the insurance bill or the policy dates of coverage. (*Id*.)  According to Plaintiff's deposition testimony, she believed that the insurance bill should have been accepted because it contained the policy number.  (ECF No. 243-2 at 3.)

Deputy Wood then returned the expired proof of insurance to Plaintiff and returned to his patrol car with her license and registration in order to write a citation. (¶ 6.)  Plaintiff alleges that, at some point during this interaction, Deputy Wood unbuttoned his shirt and placed her unexpired proof of insurance in his shirt.  (ECF No. 243-2 at 15–16.)  (*But see* ¶ 20 ("During traffic stops, my practice is to clip the driver's license and registration to my shirt pocket using the clip of my pen, which is already in my pocket.  I take these documents with me when I go back to my vehicle to enter information in the computer system.  My best guess is [Plaintiff] observed me placing the documents she gave to me on my shirt pocket.  However, I returned all of those documents to her.").)

While in his patrol car, Deputy Wood contacted dispatch to obtain additional information regarding the "attempt to locate" notification.  (¶ 7.)  Dispatch informed Deputy Wood that "there was a tow order out of Denver, that the vehicle was wanted as evidence in another crime, and that the Denver Police Department [('DPD')] would arrange to have the vehicle towed."  (*Id*.)  Deputy Wood also requested a second law enforcement vehicle to assist.  (*Id*.)  Shortly after, Sergeant Melissa Williams arrived at the scene to assist Deputy Wood, and two DPD officers arrived to tow Plaintiff's vehicle. (¶¶ 8–9; ECF No. 243-3 at 2, ¶¶ 4–5.)

Because (1) Plaintiff could not provide any future address; (2) DPD was towing her vehicle, which she lived out of; and (3) of her erratic behavior, Deputy Wood became concerned that Plaintiff would not appear for court if he issued her a summons. (¶ 12; *see also* ¶ 10; ECF No. 243-3 at 2, ¶ 6 (Sergeant Williams's account of Plaintiff's erratic behavior).) *See also* Colo. Rev. Stat. § 16-3-105(1)(b) (an officer may arrest a person for an arrestable offense where there is a concern that the suspect will not appear for court). Therefore, Deputy Wood arrested Plaintiff for failure to provide valid proof of insurance and booked her into the Arapahoe County Detention Facility ("ACDF") that night. (¶ 12; ECF No. 243-1 at 8–9.) *See also People v. Patnode*, 126 P.3d 249, 254 (Colo. App. 2005) ("In failing to produce the required insurance card, defendant committed a class one misdemeanor traffic offense for which arrest is authorized." (citing Colo. Rev. Stat. § 42-4-1409(4)(a))). Plaintiff alleges that, while she was being held at the ACDF, Deputy Wood returned her stolen valid proof of insurance by placing it into her property bag at the jail. (ECF No. 243-2 at 8.)

According to evidence submitted by Plaintiff, the charge against her for failure to provide valid proof of insurance appears to have been dismissed. (*See* ECF No. 255 at 16–17 (Plaintiff filing a motion to dismiss the charge); *id*. at 21–24 (Plaintiff discussing in state court filings how the district attorney agreed to dismiss the charge); *id*. at 34 (Plaintiff stating in a state court filing that "[a]t some point, the Court [d]ismissed the [insurance] charge").) This appears to be because prosecutors later learned that Plaintiff did in fact have insurance coverage at the time of her arrest. (*See id*. at 16–17, 21, 27; ECF No. 245 at 22 (letter from L.A. Insurance Agency confirming

that Plaintiff was insured on the date of her arrest).) *See also* Colo. Rev. Stat. § 42-4-1409(6) ("A person charged with violating subsection (1), (2), or (3) of this section shall not be convicted if the person produces in court a bona fide complying policy or certificate of self-insurance that was in full force and effect as required by law at the time of the alleged violation.").

## II. PROCEDURAL HISTORY

The procedural history of this case is not easily summarized, but a brief recitation of events will be helpful. On September 22, 2015, Plaintiff, proceeding *pro se*, filed suit against numerous defendants, including Deputy Wood and the Doe Defendants. (ECF No. 1.) On December 15, 2015, Plaintiff filed her First Amended Complaint. (ECF No. 10.) Following the filing of a Motion to Strike (ECF No. 31) and several Motions to Dismiss (ECF Nos. 37–38, 43, 47, 48), Judge Mix ordered Plaintiff to file a Second Amended Complaint (ECF No. 86).

On August 31, 2016, Plaintiff filed her Second Amended Complaint (ECF No. 88), which was soon met by a second round of Motions to Dismiss (ECF Nos. 89, 91, 97, 100, 106, 108, 134, 138). On September 14, 2017, the Court granted the Motions to Dismiss, dismissed all of Plaintiff's claims, and granted Plaintiff leave to file a Third Amended Complaint with respect to the claims dismissed without prejudice. (ECF No. 172.)

On October 2, 2018, Plaintiff filed her Third Amended Complaint, which is the currently operative complaint. ("Third Amended Complaint"; ECF No. 175.) Shortly after the Third Amended Complaint was docketed, another round of Motions to Dismiss were filed. (ECF Nos. 184, 197–98, 201.) On April 24, 2018, Judge Mix recommended

that this Court grant the Motions to Dismiss and dismiss with prejudice all of Plaintiff's claims except for

> (1) Claim Two (First Amendment retaliation) against John Doe Deputy and John Doe Officer;
>
> (2) Claim Three (Fourth Amendment unlawful arrest) against [Deputy] Wood; and
>
> (3) Claim Four (Fourth Amendment unlawful seizure of property) against John Doe Deputies and John Doe Officers.

(ECF No. 226; *see id*. at 25–26.)  Plaintiff failed to timely object, and the Court adopted the Recommendation in its entirety after conducting a clear error review.  (ECF No. 228.)

On April 8, 2019, Deputy Wood moved for summary judgment.  (ECF No. 243.) Plaintiff filed a Response to the Motion on April 16, 2019.  ("Response"; ECF No. 245.) The undersigned subsequently referred the Motion to Judge Mix, who issued her Recommendation on July 17, 2019.  (ECF Nos. 246 & 260.)  The following week, Plaintiff filed "Nunc Pro Tunc Corrections" to her Third Amended Complaint and to her Response—which the Court will address more fully below.  (ECF Nos. 262–63.)  On July 30, 2019, Plaintiff filed her Objection to the Recommendation.  (ECF No. 264.)

## III.  ANALYSIS

### A.    Doe Defendants

In the Recommendation, Judge Mix concluded that the Doe Defendants should be dismissed without prejudice.  (ECF No. 260 at 3, 27.)  In support, Judge Mix noted that Plaintiff had filed a Notice—titled, in pertinent part, as "Plaintiff['s] Dismissal of Action Against [Doe Defendants]"—wherein she discussed her intent to dismiss the Doe

7

Defendants as she did not know their identities.  (ECF No. 231 at 1–2; ECF No. 260 at 3.)  In her Objection, Plaintiff states that she "<u>AGREES</u> that a recommendation to dismiss all John Doe Defendants without prejudice . . . [is] an appropriate recommendation."  (ECF No. 264 at 1 (emphasis in original).)

Therefore, it is clear that Plaintiff has abandoned her claims against the Doe Defendants.[3]  Accordingly, the Court will dismiss the Doe Defendants without prejudice and enter judgment in their favor.  As a result, Plaintiff's sole remaining claim is her Fourth Amendment unlawful arrest claim that she asserts against Deputy Wood in his individual capacity.  (*See* ECF No. 175 at 39–43.)

## B.  Plaintiff Failed to Specifically Object to the Recommendation

As necessary context for the Court's ruling, the Court will first briefly discuss the pertinent filings—*i.e.*, the Motion, the Response, the Recommendation, the "Nunc Pro Tunc Corrections," and the Objection.

### 1.  The Motion

In the Motion, Deputy Wood set forth his statement of undisputed facts and moved for summary judgment on the grounds that he is entitled to qualified immunity, and because no reasonable juror could find in Plaintiff's favor as her "explanation of events is inconsistent, incomplete, and undermined by other credible evidence."  (ECF

---

[3]  Indeed, the Third Amended Complaint even provides that "[a]lthough the Third Amended Complaint includes acts of Defendant John Does, they are no longer included as Defendants due to the problems with identifying and serving them."  (ECF No. 175 at 2; *see also* ECF No. 231 at 3 ("The single remaining defendant . . . is Deputy Wood."); ECF No. 244 at 2 ("[Deputy] Wood is the last remaining defendan[t] in the above case"); ECF No. 245 at 3 ("All issues . . . have been adjudicated by this Court leaving [Deputy] Wood [as] the sole Defendant.").)

No. 243; *id*. at 3.)

Deputy Wood argues that he is "entitled to qualified immunity because even interpreting all reasonable inferences in favor of [Plaintiff], the evidence supports Deputy Wood's objectively reasonable belief that he had probable cause to effect the arrest." (*Id*. at 9; *see also id*. (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011) ("[w]hen a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest")).) In particular, Deputy Wood asserts that because there is "no evidence" that he knew Plaintiff "had provided him a valid proof of insurance and because it was reasonable not to accept an insurance bill as evidence to prove the vehicle was insured, Deputy Wood is entitled to qualified immunity on [Plaintiff's] only remaining claim for false arrest." (ECF No. 243 at 14; *see also id*. at 9–14.) In addition, Deputy Wood argues that Plaintiff "has not and cannot meet" her "burden to show that Deputy Wood violated a clearly established right" because there "is no law clearly establishing [that an] officer violates a citizen's constitutional rights by not accepting an insurance bill as proof of insurance, particularly where that bill does not identify the associated vehicle." (*Id*. at 14 n.4.)

In the alternative, Deputy Wood argues that even if the Court finds that he is not entitled to qualified immunity, summary judgment must still be granted because no reasonable juror could find in Plaintiff's favor. (*Id*. at 14; *see also id*. at 14–20.) Specifically, Deputy Wood asserts that Plaintiff's "outlandish claim" that he stole her valid proof of insurance, hid it inside of his shirt, arrested her for failure to provide proof

of insurance, and then slipped her valid proof of insurance into her property bag at the jail, is "supported solely by [Plaintiff's] own conspiratorial conjecture." (*Id*. at 14.) Deputy Wood argues, however, that "no reasonable jury would possibly credit her testimony" because (1) it is riddled with "nonsensical statements," "conspiratorial conclusions," and "internal inconsistencies that defy common sense"; (2) of her "lengthy history of similarly outlandish allegations"; and (3) "much of her testimony is based on speculation, conjecture, or surmise." (*Id*. at 15; *see also id*. at 20.)

2.    The Response

In her Response, Plaintiff states her view of the legal standard regarding a motion to dismiss—rather than a motion for summary judgment—and follows with a brief background section. (ECF No. 245 at 2–3.) In that section, Plaintiff discusses how she has been subjected to "massive and continual retaliation" in "the form of police misconduct, physical assaults, poisioning [*sic*] and vandelizm [*sic*]" after she filed an affidavit in a different lawsuit. (*Id*. at 3.) Plaintiff then discusses how Deputy Wood is the sole remaining Defendant in this case, before going on to present her statement of undisputed facts. (*Id*.)

Notably, Plaintiff's statement of undisputed facts merely restates, practically verbatim, several of the undisputed facts in the Scheduling Order. (*Compare id*. at 3–4, *with* ECF No. 236 at 6–7.) Specifically, Plaintiff's undisputed facts section provides that (1) this "matter is filed in the proper court"; (2) "Plaintiff is an American Citizen"; (3) Deputy Wood "is employed by Arapahoe County Sheriff[']s Department"; (4) Deputy Wood "was acting under the scope of his employment"; and (5) Deputy Wood "made a

10

warrantless arrest of Plaintiff on Sept. 28, 2014." (ECF No. 245 at 3–4.)

In the Response's next section, Plaintiff, *inter alia*, disputes various portions of Deputy Wood's Declaration. (*Id*. at 4–8.) For instance, Plaintiff asserts that (1) Deputy Wood "never drove to the intersection, but rather followed [her] into th[e] parking lot"; (2) Deputy Wood "should have immediatley [*sic*] turned on his light to pull [her] over" when he received a "hit" for a warrant on his License Plate Reader; (3) she "was free to enter into any lane" when she turned left out of the parking lot; (4) she has "never gone to the sheriff[']s department to harrass [*sic*] [Deputy Wood]," but goes there for "other business"; (5) her "behavior during the arrest was appropriate," and she "made no bizaire [*sic*] comments to anyone"; and (6) her insurance bill "contained all information required to prove [she] was insured" as it listed her policy number. (*Id*. at 4–6; *see also id*. at 7–8.)

In the next section—titled, "Rebuttal to Attorney Mott[']s Claims"—Plaintiff makes various allegations of improper conduct by Deputy Wood's counsel, which apparently culminated in Plaintiff attempting to file criminal charges against the attorneys. (*Id*. at 8–10 (discussing stolen documents and computer discs, burglarized storage units, sham appointments, and so on).) Plaintiff also makes vague accusations of "a massive police cover-up" and evidence tampering by the Arapahoe County Sheriff's Office. (*Id*. at 9–10.)

In Plaintiff's final section—captioned, "Argument"—Plaintiff makes various assertions regarding this case. In relevant part, Plaintiff avers that (1) she has made a "proper" "unconstitutional false arrest" claim; (2) the charges brought against her were

dismissed; (3) she does not believe there were ever any "warrant[s] filed or holds imposed" against her or her truck; and (4) she believes that "a jury would find [Deputy Wood] guilty of falsely arresting [her]." (*Id*. at 11–12.)

Plaintiff also attached to the Response various documents—*i.e.*, four incomplete "Authorization for Release of Information" forms, a letter from Deputy Wood's counsel regarding the forms, four subpoenas to insurance companies, a letter from an insurance company confirming that Plaintiff had insurance on the night she was arrested, a letter from the Arapahoe County Sheriff's Office informing Plaintiff that her request for a new investigator was denied, and a subpoena to Plaintiff to testify in an arson case in state court. (*Id*. at 14–26.)

3.   The Recommendation

In the Recommendation, Judge Mix discussed at length "the numerous deficiencies with Plaintiff's Response." (ECF No. 260 at 10–14.) In particular, Judge Mix discussed how Plaintiff's Response (1) "fails to address [Deputy] Wood's assertion of qualified immunity or the legal merits of the Motion"; (2) "incorrectly refers to and appears to rely on the legal standard courts utilize when adjudicating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)"; (3) improperly "raises several disputes regarding the discovery process in the case"; and (4) "fails to adequately address [Deputy] Wood's statement of undisputed facts or offer admissible evidence in opposition to the Motion." (ECF No. 260 at 10–14.)

Judge Mix noted that to "the extent that Plaintiff does contest a statement of fact, she does not cite to evidence in the record to demonstrate that the fact is genuinely in dispute." (*Id*. at 13 (citing Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot

be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.")); *see also* ECF No. 260 at 4.)  Judge Mix also discussed the various documents Plaintiff attached to her Response, and found that the only document that "appears remotely relevant to the issues central to the present Motion" was the letter from an insurance company confirming that Plaintiff had insurance on the night she was arrested.  (ECF No. 260 at 13.)  In addition, Judge Mix discussed how Plaintiff's statements in her Third Amended Complaint and Response "cannot be used as evidence for purposes of the present Motion" as they "are not verified pursuant to 28 U.S.C. § 1746."  (ECF No. 260 at 13–14)

Judge Mix then discussed how failure to provide proof of insurance is a class 1 misdemeanor and an arrestable offense, Colo. Rev. Stat. § 42-4-1409(4)(a), and how an officer may arrest a person for an arrestable offense where there is a concern that the suspect will not appear for court, Colo. Rev. Stat. § 16-3-105(1)(b).  (ECF No. 260 at 18–19.)  Judge Mix concluded that Plaintiff's failure to provide a valid proof of insurance under the circumstances could lead a reasonable person to believe that Plaintiff had violated Colo. Rev. Stat. § 42-4-1409.  (*Id*. at 26.)  Therefore, Judge Mix determined that Plaintiff had "failed to rebut [Deputy] Wood's assertion of qualified immunity by demonstrating that he arrest lacked probable cause, *i.e.*, that [Deputy] Wood violated a constitutional right."  (*Id*.)  As a result, Judge Mix recommended that judgment enter in favor of Deputy Wood on Plaintiff's Fourth Amendment claim for

unlawful arrest.[4]  (*Id*.)

### 4.    The "Nunc Pro Tunc Corrections"[5]

After the Recommendation was docketed, Plaintiff filed "Nunc Pro Tunc Corrections" to her Third Amended Complaint and to her Response to the Motion. (ECF Nos. 262–63.)  In regard to her Nunc Pro Tunc Corrections to her Third Amended Complaint, Plaintiff appears to be attempting to amend her complaint by omitting all allegations concerning her insurance (*e.g.*, allegations that she gave Deputy Wood valid proof of insurance, that he stole her valid proof of insurance before placing it into her property bag, and so on), while keeping allegations relating to the initial traffic stop. (*See generally* ECF No. 262.)  In all, Plaintiff attempts to delete a "total of 41 paragraphs" from her Third Amended Complaint.  (*Id*. at 3.)

Similarly, Plaintiff also attempts to amend her Response through her second Nunc Pro Tunc filing.  (*See generally* ECF No. 263.)  In particular, Plaintiff expresses her intent to delete the majority of her Response, including the sections titled: "Factual Background," "Undisputed Facts," "Rebuttal to Wood[']s Declaration," and "Rebuttal to Attorney Mott[']s Claims."  (ECF No. 263 at 1–2; *see also* ECF No. 245 at 2–10.)

_____

[4]  Because Judge Mix determined that Plaintiff had failed to satisfy the first prong of the qualified immunity analysis, the Recommendation did not address in detail "Plaintiff's failure to show that 'it would have been clear to a reasonable officer that probable cause was lacking under the circumstances (that is, that the right was clearly established in the specific situation).'" (ECF No. 260 at 26 n.9 (quoting *Koch*, 660 F.3d at 1241).)  Similarly, Judge Mix also did not consider Deputy Wood's alternative argument that summary judgment must be granted because no reasonable juror could find in Plaintiff's favor.  (ECF No. 260 at 26 n.9.)

[5]  *See Nunc Pro Tunc*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Having retroactive legal effect through a court's inherent power."); *see also Nunc Pro Tunc Amendment*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An amendment that is given retroactive effect, usu[ally] by court order to correct a clear mistake and prevent injustice, but not to alter the court's original purpose.").

Plaintiff then appears to go through Deputy Wood's Statement of Undisputed Facts contained in the Motion, and discusses which of his paragraphs are "moot" since Plaintiff "removed" the "insurance issue" via her Nunc Pro Tunc Corrections to her Third Amended Complaint. (ECF No. 263 at 1–4.) Plaintiff then addresses Deputy Wood's few remaining undisputed facts that she did not determine to be moot. (*Id*. at 4–5.) In particular, Plaintiff argues that she "did not violate any traffic law," and that Deputy Wood "followed Plaintiff into [the] parking lot and out again." (*Id*.) Finally, Plaintiff includes a new section—titled, "Genuine Issues of Material Fact in Dispute"—wherein Plaintiff makes various allegations regarding the traffic stop and how her Fourth Amendment unlawful arrest claim is based on the traffic stop and not issues raised in the Motion. (*Id*. at 6–8.)

Plaintiff's Nunc Pro Tunc Corrections to her Third Amended Complaint were filed on July 25, 2019—which is exactly 300 days after the September 28, 2018 deadline for amending pleadings. (ECF No. 262; ECF No. 236 at 10.) "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). If a plaintiff fails to satisfy either factor—(1) good cause or (2) Rule 15(a)—then the plaintiff is not entitled to have the scheduling order modified. *Id*. at 1241. Here, Plaintiff has not even attempted to satisfy either factor. (*See* ECF No. 262.) Moreover, Plaintiff has not provided the Court with any basis for allowing her to amend her Response *sua sponte*. (ECF No. 263.) As a result, the Court will not

consider the contents of either filing (ECF Nos. 262–63) in assessing the Recommendation and the Motion.

     5.    <u>The Objection</u>

Plaintiff filed her Objection on July 30, 2019, which was several days after she docketed her Nunc Pro Tunc Corrections. (ECF Nos. 262–64.) In the Objection, Plaintiff makes various arguments regarding how her false arrest claim was solely based on the "unlawful traffic stop" and not "on insurance issues," and how Judge Mix erred in failing to consider her "true claim." (ECF No. 264 at 2, 4–6.) Plaintiff discusses how her "recent Nunc Pro Tunc[] entry . . . redacted many paragraphs in the [Third Amended Complaint] that although described events during the false arrest, were never part of the [false arrest] claim." (*Id*. at 2–3.)

Plaintiff also asserts that Deputy Wood "filed a 'false' motion for summary judgment for claims against him NEVER asserted in the [Third Amended Complaint]." (*Id*. at 3 (emphasis in original).) Plaintiff contends that "[t]his false motion for summary judgment before [Judge] Mix, forced her to make a recommendation on issues raised by [the] Motion." (*Id*.) Plaintiff asserts that because "none of those issues were based [o]n the claim made by Plaintiff, that of a false traffic stop, no proper recommendation was ever possible." (*Id*.)

Plaintiff also contends that "[q]ualified immunity and legal merits of the Motion . . . do not require a reply as that Motion is falsely made." (*Id*. at 9.) Similarly, Plaintiff also appears to argue that she did not need to dispute Deputy Wood's Statement of Undisputed Facts contained in the Motion because none of his facts were "essential

respecting a claim of false arrest for an unlawful traffic stop." (*Id*. at 6.)  In the rest of the Objection, Plaintiff makes a variety of rambling and largely redundant arguments and assertions that the Court frankly has difficulty in deciphering. (*See generally* ECF No. 264.)  However, Plaintiff's arguments appear to be focused on how (1) Judge Mix erred in considering evidence and argument regarding whether Plaintiff provided valid proof of insurance, which Plaintiff now views as irrelevant to her false arrest claim; and (2) Judge Mix erred because she did not properly evaluate Plaintiff's true claim of false arrest arising from an unlawful traffic stop. (*See generally id*.)

        6.    <u>Clear Error Review</u>

        The Recommendation advised the parties that failure to serve and file *specific*, written objections waives *de novo* review of the Recommendation by the Court.  (ECF No. 260 at 27.)  Despite this explicit advisement, Plaintiff failed to file a sufficiently specific objection.  (*See* ECF No. 264.)  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute, and gives the district court an opportunity to correct any errors immediately."  *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (citations and internal quotation marks omitted).  Rather than specifically objecting to the Recommendation, Plaintiff chose instead to attempt to amend her Third Amended Complaint and Response, in order to reformulate her false arrest claim.  (*See* ECF Nos. 262–63.)  Plaintiff then argues—for the first time—in her Objection that the Magistrate Judge erred in not evaluating her "true" claim of false arrest arising from an unlawful traffic stop.  This is clearly not an appropriate use of an objection to a

17

magistrate judge's recommendation. Indeed, "[i]n this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

For these reasons, the Court finds that Plaintiff has failed to specifically object to Judge Mix's findings. (*See generally* ECF No. 264.) As a result, the Court reviews the Recommendation's findings for clear error. *See 2121 East 30th St.*, 73 F.3d at 1060 ("[A] party's objections to the magistrate judge's report and recommendation must be both timely *and specific* to preserve an issue for *de novo* review by the district court") (emphasis added). The Court finds that Judge Mix's analysis was thorough and sound, and that there is no clear error on the face of the record. *See Bertolo v. Benezee*, 2013 WL 1189508 (D. Colo. Mar. 22, 2013) (district court reviewing for clear error where no specific objections were made to a recommendation), *aff'd*, 601 F. App'x 636 (10th Cir. 2015).

Although more is surely not needed in this regard, the Court will briefly address Plaintiff's "true" claim of false arrest arising from an unlawful traffic stop. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "Because a routine traffic stop is considered a seizure within the meaning of the Fourth Amendment, all traffic stops must be reasonable." *United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018) (alteration incorporated) (internal quotation marks omitted). "A traffic stop is reasonable if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015) (alteration incorporated). Here,

Plaintiff only challenges the initial justification for the traffic stop, not its scope.

"A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009); *see also Martinez*, 910 F.3d at 1313 ("Typically, a traffic stop is justified if the officer observes or reasonably suspects a traffic or equipment violation.").

Here, it is beyond dispute that Deputy Wood witnessed Plaintiff commit a traffic violation when she turned left out of a parking lot into the outer-most right-hand lane. (¶ 3; *see also* ECF No. 243-2 at 2 (Plaintiff admitting that in turning left out of the parking lot, she went "straight across the road, [to] the farthest lane.").) *See also* Colo. Rev. Stat. § 42-4-901(1)(b) ("Whenever practicable, the left turn shall be made to the left of the center of the intersection so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered."). Notably, Plaintiff's only argument—that she was free to turn left from the parking lot into any lane she wished as long as she yielded the right of way away to oncoming traffic—is without legal support. (ECF No. 245 at 5.) *People v. Vaughn*, 334 P.3d 226, 228–29 (Colo. 2014) (finding reasonable suspicion where the suspect turned left "into the far right-hand lane . . . , rather than into the far left-hand lane"); *see also United States v. Nicholson*, 721 F.3d 1236, 1239–40 nn.2 & 4 (10th Cir. 2013) (discussing how Colorado "require[s] a driver to turn left into the leftmost lane"). *Cf. United States v. Cunningham*, 630 F. App'x 873,

878–79 (10th Cir. 2015) ("while [the suspect's] vehicle started from a private parking lot, the actual turning of her vehicle occurred on the public street"). Even if the Court were to assume that Plaintiff's conduct did not amount to a traffic violation, the record amply supports the notion that Deputy Wood had a reasonable articulable suspicion to believe that Plaintiff had violated a traffic regulation.

Because Deputy Wood had probable cause to believe Plaintiff had committed a traffic violation—or, at the very least, reasonable articulable suspicion that Plaintiff had violated a traffic regulation—the traffic stop was justified at its inception. *See Winder*, 557 F.3d at 1134. Thus, even if Plaintiff could reformulate her false arrest claim at this late hour, the claim would still fail because it is beyond dispute that the traffic stop was reasonable and therefore did not violate her Fourth Amendment right to be secure from unreasonable searches and seizures.

## IV. CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1.  The Recommendation (ECF No. 260) is ADOPTED in its entirety;

2.  Plaintiff's Objection (ECF No. 264) is OVERRULED;

3.  Defendant Deputy Wood's Motion for Summary Judgment (ECF No. 243) is GRANTED;

4.  Plaintiff's claims against Defendants John Doe Deputy, John Doe Officer, John Doe Deputies, and John Doe Officers are DISMISSED WITHOUT PREJUDICE;

5.  The Clerk of the Court shall enter judgment in favor of all Defendants and against Plaintiff, and shall terminate this case; and

6.  Each party shall bear their own attorneys' fees and costs.

Dated this 31st day of October, 2019.

BY THE COURT:

William J. Martínez
United States District Judge